UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| ANDREW ALLEN REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:17-CV-146-GFVT-HAI |
| v. | ) | |
| | ) | |
| TRAVIS CATHERS, *et al.*, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In June 2017, the Clerk of Court docketed a complaint by *pro se* Plaintiff Andrew Allen Reeves in which he alleges violation of his constitutional rights by the jailer and various correctional officers at the Laurel County Correctional Center. *See* D.E. 1. Now, the defendants, Sgt. Travis Cathers, Lt. Shawn Davis, Det. Billy Madden, and Jailer Jamie Mosley[1] have filed their second motion for summary judgment. D.E. 46. The District Judge has referred this matter to the undersigned for a recommendation. *See* D.E. 16; D.E. 30. For the following reasons, the Court **RECOMMENDS** that the defendants' motion (D.E. 46) be **GRANTED**.

I.

A short discussion of the procedural posture of this case gives context to the defendants' motion. Reeves's original complaint was docketed on June 5, 2017. *See* D.E. 1. In his complaint, Reeves alleges that Sgt. Cathers struck him in the jaw while his hands were handcuffed behind his back, that Lt. Davis was deliberately indifferent to the situation and disregarded the grievances that Reeves filed, that Det. Madden failed to investigate the situation properly, and that Jailer

---

[1] Jailer Mosley's name is spelled at least two different ways in the record. According to the Laurel County Corrections website, the proper spelling is "Mosley." *See* http://laurelcorrections.com/history.php.

1

Mosley "failed to take any action." *See id.* at 2. Based on these allegations, Reeves claims that the defendants violated his Eighth Amendment rights by subjecting him to cruel and unusual punishment and by failing to protect him. *See id.* at 4.

In September 2018, the defendants filed their first motion for summary judgment. *See* D.E. 34. That motion was based on Reeves's failure to answer certain questions in discovery posed to him by the defendants. *See id.* However, the Court determined summary judgment was not proper at that time because the defendants did not meaningfully discuss the elements Reeves would be required to prove to succeed on his Eighth Amendment claims. *See* D.E. 42 at 3.

The defendants filed their second motion for summary judgment on February 18, 2019. *See* D.E. 46. The next day, the undersigned ordered Reeves to file a response to the defendants' motion on or before March 18, 2019. *See* D.E. 48. Reeves did not file a response to the defendants' motion, and he has not made any filings with the Court since September 2018. The defendants' motion now stands submitted to the undersigned for a recommended disposition. *See* D.E. 30; *see also* D.E. 16.

As will be explained below, the Court recommends that the defendants' motion for summary judgment be granted for two reasons. First, Reeves failed to respond to the motion, meaning it is unopposed. Second, even viewing the facts in the light most favorable to Reeves, his claims fail on the merits.

II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Under Rule 56(a), "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."

III.

A. Reeves's Failure to Respond to the Defendants' Motion

The defendants are first entitled to summary judgment because Reeves failed to respond to their motion. Importantly, Local Rule 7.1 permits this result. That rule provides in relevant part that: "Failure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c). In this case, the parties' dispositive motions deadline was February 18, 2019, see Docket Entry 42 at 3, and Reeves was apprised of the need to file a response to the defendants' motion by the Court's order at Docket Entry 48.

Although *pro se* litigants are entitled to leniency from the Court and to liberal construction of their pleadings, they are still required to comply with the Federal Rules of Civil Procedure, the Local Rules of this Court, and Court orders. Because Reeves did not respond to the defendants' motion for summary judgment, the Court views the motion as unopposed and will recommend that the motion be granted.

B. Reeves's § 1983 Claims

Although the defendants are entitled to summary judgment because of Reeves's failure to timely respond to their motion, the Court will briefly address each of Reeves's claims on the merits brought pursuant to 42 U.S.C. § 1983.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

3

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

As a threshold matter, Reeves's complaint does not specify whether the defendants were named in their official or individual capacities. However, such a deficiency can be resolved through the course of litigation itself, as it has in this case. *Goodwin v. Summit Cty.*, 703 F. App'x 379, 382 (6th Cir. 2017) (citing *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc)). "If a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, [the court] then look[s] to the course of proceedings to determine whether the defendants received sufficient notice that they might be held individually liable." *Id.* (internal quotation marks and emphasis omitted).

The "course of proceedings" in the instant case, namely defendants' present motion for summary judgment, evinces an assumption by defendants that Reeves is suing each defendant in his individual capacity. For purposes of this recommended disposition, the Court will analyze the claims against each defendant primarily under that construction.

As the Supreme Court has explained, the object of a personal-capacity suit is to "impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To support such a claim, Reeves must show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The test has two components, and Reeves must show that the particular defendant (1) acted under color of state law and that the defendant (2) violated one of Reeves's constitutional rights. At the time of the incident with Reeves, Sgt. Cathers, Lt. Davis, Det. Madden, and Jailer Mosley were employed by the Laurel County Correctional Center. Thus, the "color of state law" requirement of § 1983 is satisfied. *See West*, 487 U.S. at 50.

4

By contrast, when a defendant is sued in his official capacity, the lawsuit will be treated as if it had been brought against the government entity employing the person. *Graham*, 473 U.S. at 165-66. In such suits, a municipality will face liability only if the official defendants acted pursuant to municipal policy or custom. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91 (1978).

1. Individual-Capacity Claims

A. Sgt. Travis Cathers

To succeed on his claim against Sgt. Cathers, Reeves must show that Sgt. Cathers's actions amounted to a denial of a constitutional right. The primary allegation of Reeves's suit, from which all other claims derive, is that Sgt. Cathers struck Reeves in the jaw while Reeves's hands were handcuffed behind his back. D.E. 1 at 2. Reeves was a convicted prisoner at the time of the alleged incident, and therefore his claims against Sgt. Cathers are governed by the Eighth Amendment's Cruel and Unusual Punishments Clause. Specifically, Reeves's suit implicates the Eighth Amendment's prohibition against the use of excessive force.

In an excessive force inquiry, the Court's main focus is: "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court has described this inquiry as having a subjective and objective component.[2] *See id.* at 7–8; *see also Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

In making the inquiry into the subjective prong, the Court should consider several factors, including whether the use of force was necessary, whether the force used was proportional to the

---

[2] In the context of a pretrial detainee's excessive force claim, the Supreme Court has held that the detainee "need only meet the objective component by showing that 'the force purposely or knowingly used against him was objectively unreasonable.'" *See Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

5

threat, the extent of the injury inflicted, and "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks omitted).

Even accepting Reeves's allegations as true, Sgt. Cathers's actions appear warranted in order to preserve order and maintain security at the jail. Prison officials are given wide deference to control prison disturbances. "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, [courts] must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (internal quotation marks omitted).

Crucial to this analysis is the fact that the reason Sgt. Cathers engaged with Reeves at all was because Reeves was involved in a physical altercation with his cellmate. In fact, Reeves admitted that an officer "noticed that [Reeves's cellmate] had a black eye." *See* D.E. 46-6 at 7. On these facts, Sgt. Cathers was permitted to determine that some degree of force was needed to restrain Reeves and take control of the situation. It follows, then, on this record, that Sgt. Cathers's removal of Reeves from the cell, and subsequent alleged punch, were proportional to the situation.

Relatedly, for the objective prong of the analysis, the Eighth Amendment necessarily excludes *de minimis* uses of physical force. *Hudson*, 503 U.S. at 9-10. In other words, even a malevolent use of physical force by a prison guard will not automatically violate the Eighth Amendment, provided it is not of a sort "repugnant to the conscience of mankind." *Id.* at 10 (internal quotation marks omitted). Further, the Supreme Court has stated that the judicial inquiry in an excessive force claim should focus on "the nature of the force rather than the extent of the injury." *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam). Thus, although Reeves need not have suffered a serious injury to establish an Eighth Amendment violation, the extent of the

6

injury suffered is nevertheless relevant to the inquiry, as it may indicate whether excessive force was actually applied.

Here, Reeves has not presented any facts that describe a sufficiently serious injury. For instance, he has not pointed to any evidence that he suffered any serious medical problems following the incident, and he only testified that he experienced soreness in his jaw for a few days. D.E. 46-3 at 8.[3] Additionally, when Reeves was asked by the jail nurse if he had any other injuries besides the soreness in his jaw, he admits that he "told her no," and he described his pain as a "one or two" on a scale from one (best) to ten (worst) during the days in which he experienced jaw soreness,[4] and he never requested any pain medication from medical staff. *Id.* at 9, 12. Finally, Reeves has not suffered any medical expenses as a result of the alleged punch by Sgt. Cathers, and he does not expect to incur any medical expenses in the future. *Id.* at 14, 16.

Upon such facts, what Reeves describes as a "quick jab to the jaw" that evidently caused him only minor discomfort and no lingering medical issues can properly be considered as a *de minimis* use of force. *See Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008) (a prison guard's "karate chop" blow to the back of a pretrial detainee's neck was a *de minimis* use of force). Accordingly, Sgt. Cathers is entitled to summary judgment on Reeves's claims.

### B. Lt. Shawn Davis

Because Reeves has not shown a denial of his Eighth Amendment rights by Sgt. Cathers, his derivative claims against the remaining defendants necessarily fail. However, the Court will discuss each defendant separately.

---

[3] Docket Entry 46-3 contains excerpts from Reeves's deposition. When citing to that exhibit, the Court uses the page numbers within CM/ECF rather than the transcript itself.
[4] Reeves testified that, at the time he was struck, his pain was a five or six. *See* D.E. 46-3 at 8-9.

7

First, Reeves claims that Lt. Davis was "deliberately indifferent" with regard to the subject incident and that he failed to properly investigate his claims. D.E. 1 at 2. Although the court views the evidence in the light most favorable to the plaintiff when reviewing motions for summary judgment, Reeves has failed to provide any evidence that substantiates his claim. For example, Reeves states that Lt. Davis violated the Department of Corrections Rules and Procedures by failing to respond to Reeves's grievance within ten business days. *See* D.E. 46-6 at 10. Even if this allegation were true, it is well-settled that constitutional violations cannot be shown merely through violations of a prison's grievance system. *See Casey v. Billings*, No. 4:06CV-119-M, 2007 WL 1832125, at *2 (W.D. Ky. June 24, 2007); *see also Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (stating that there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedures"). Therefore, to the extent that Reeves's complaint alleges insufficient grievance procedures and the failure of Lt. Davis to properly investigate grievances, Reeves cannot claim a constitutional violation.

Similarly, Reeves has not presented any evidence to survive summary judgment as it relates to his claim that Lt. Davis "failed to protect" him from physical harm. An Eighth Amendment "failure to protect" claim must be established by deliberate indifference on the part of the defendant. This can be shown by facts that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Nothing in the record suggests that Lt. Davis (or any of the other defendants) knew of an excessive risk to Reeves's health or safety. In fact, Reeves even testified that he "[doesn't] have, you know, facts that they actually failed to protect my safety." *See* D.E. 46-3 at 17.

And, to the extent that Reeves's complaint alleges that Lt. Davis failed to properly handle surveillance video footage of the incident, his claim lacks merit. Here, Reeves testified that he "didn't tell [Det. Madden] specifically to save the video," but rather he expected that the tape would have been saved regardless as part of a proper investigation. *See id.* at 18. However, by Reeves's own testimony, he thought Det. Madden would review the video evidence, which undercuts any claim that Lt. Davis was deliberately indifferent to any risk Reeves faced. Thus, Lt. Davis is entitled to summary judgment on Reeves's claim against him.

### C.  Det. Billy Madden

Reeves also alleges that Det. Madden failed to properly investigate the subject incident. *See* D.E. 1 at 2. However, as was true with regard to the claims against Lt. Davis, there is no factual basis for Reeves's "failure to protect" claim against Det. Madden because Det. Madden did in fact speak with Reeves about the alleged incident with Sgt. Cathers and asked Reeves questions about the incident. *See* D.E. 46-3 at 4.

Although Reeves alleges that Det. Madden "should have done more," including saving the video evidence, courts have held that a plaintiff's claim that defendants "did not respond to grievances with a proper investigation and explanation as required by the Detention Center's grievance procedures does not state a claim for a constitutional violation." *Casey*, 2007 WL 1832125, at *2. For this reason, Reeves's claim against Det. Madden fails, and Det. Madden is entitled to summary judgment.

### D.  Jailer Jamie Mosley

Reeves's sole claim against Jailer Mosley is that he "failed to take any action" regarding the incident with Sgt. Cathers. D.E. 1 at 2. As discussed previously, Jailer Mosley cannot be held derivatively liable for a violation of Reeves's constitutional rights when the Court concludes that no violation occurred. Assuming, *arguendo*, that Reeves has stated a viable claim against Sgt.

9

Cathers, his allegation that Jailer Mosley failed to properly investigate the incident fails for the same reasons discussed above in the context of his claims against Lt. Davis and Det. Madden.

First, the Court takes note that Reeves's allegation that Jailer Mosley "failed to take any action" is factually incorrect. Indeed, Reeves testified that Jailer Mosley came to speak with him about the alleged incident involving Sgt. Cathers. *See* D.E. 46-3 at 3. But, although Reeves alleges that Jailer Mosley did not do "enough" to investigate, he fails to state any specific examples of how Jailer Mosley's investigation was deficient.

An alleged failure to conduct a proper investigation in the grievance procedure context does not state a claim for a constitutional violation. S*ee Casey*, 2007 WL 1832125, at *2. Furthermore, Jailer Mosley cannot be held liable simply as a result of his supervisory position. *See Iqbal*, 556 U.S. at 677. In this case, Reeves cannot point to any evidence establishing active unconstitutional behavior on the part of Jailer Mosley. For that reason, Jailer Mosley is also entitled to summary judgment.

### E. Qualified Immunity

As a concluding matter within this context, the defendants claim qualified immunity shields them from suit. Because Reeves has failed to show a violation of his constitutional rights, the defendants are correct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (explaining that government officials are immune from suit when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

### 2. Official-Capacity Claims

To the extent that Reeves's complaint can be read to assert claims against the defendants in their official capacities, the Court can easily dispense of such claims. As explained above, any claim against the defendants in their official capacities is treated as a claim against Laurel County,

and to succeed, Reeves would have to demonstrate that a municipal policy or custom was responsible for the constitutional violation he asserts. *See Monell*, 436 U.S. at 690-91. Here, Reeves has not shown any violation of his Eighth Amendment rights, let alone that any such violation resulted from a municipal policy or custom. Thus, any official-capacity claim by Reeves cannot succeed.

IV.

Because the defendants' motion for summary judgment is unopposed, and because Reeves's claims fail when reviewed on the merits, the Court **RECOMMENDS** that the defendants' second motion for summary judgment (D.E. 46) be **GRANTED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) and Rule 72(b) for appeal rights and mechanics concerning this recommended disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 15th day of July, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge